KING & SPALDING LLP ~~JUDGE BAER~~
1185 Avenue of the Americas
New York, New York 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur J. Steinberg
Heath D. Rosenblat

and

KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Sarah Robinson Borders

*Counsel for General Electric Capital Corporation*

10 CV 26



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, <br><br> PLAINTIFF, <br><br> - AGAINST - <br><br> BLACK CROW MEDIA, L.L.C., ROCKET CITY BROADCASTING LLC, BLACK CROW MEDIA OF VALDOSTA LLC (F/K/A RTG MEDIA, L.L.C.), THOMAS MEDIA OPERATIONS, L.L.C., BLACK CROW RADIO, L.L.C., BCA RADIO, L.L.C., RTG RADIO, L.L.C., THOMAS RADIO, L.L.C., AND RAINBOW MEDIA, INC., <br><br> DEFANDANTS. | Civil Action No. _____ <br> ECF Case |

## VERIFIED COMPLAINT

Plaintiff General Electric Capital Corporation ("GE Capital" or "Lender"), by its undersigned attorneys, King & Spalding LLP, as and for its verified complaint

("Verified Complaint") against the above-captioned Defendants (as defined below), alleges as follows:

## NATURE OF ACTION

1. GE Capital brings this action against (i) Black Crow Media, L.L.C. ("BCM"), (ii) Rocket City Broadcasting LLC (f/k/a STG Media, L.L.C.) ("Rocket"), (iii) Black Crow Media of Valdosta, LLC (f/k/a RTG Media, L.L.C.) ("BCM of Valdosta"), (iv) Thomas Media Operations, L.L.C. ("TMO"), (v) Black Crow Radio, L.L.C ("BCR"), (vi) BCA Radio, L.L.C. ("BCA"), (vii) RTG Radio, L.L.C. ("RTG"), (viii) Thomas Radio, L.L.C. ("Thomas Radio"), and (ix) Rainbow Media, Inc. ("Rainbow") (each a "Defendant" and, collectively, the "Defendants"), seeking, in accordance with (i) that certain Credit Agreement (as amended, modified, or supplemented, the "Credit Agreement"), by and among GE Capital and Black Crow Media Group, L.L.C. ("BCM Group"), BCM, Rocket, BCM of Valdosta, TMO, BCR, BCA, RTG, Thomas Radio, and Rainbow, dated October 3, 2003, a true and correct copy of which is attached hereto as Exhibit A, and (ii) that certain Borrowers' Security Agreement ("Security Agreement"), by and among GE Capital and BCM Group, BCM, Rocket, BCM of Valdosta, TMO, BCR, BCA, RTG, Thomas Radio, and Rainbow, dated October 3, 2003, a true and correct copy of which is attached hereto as Exhibit B, (a) the appointment of a receiver as specifically set forth in the Credit Agreement and (b) for such receiver to take possession and control of the Collateral[1] of the Defendants.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Credit Agreement.

# THE PARTIES

## A. The Plaintiff

2. GE Capital is a Delaware corporation qualified to do business in the State of New York. GE Capital brings this action in its capacity as a lender and as the agent for the Lenders under the Credit Agreement.

## B. The Defendants

3. Upon information and belief, the Defendants collectively are the owners and operators of nineteen (19) FM and seven (7) AM radio stations in the southeastern United States, specifically, Alabama, Tennessee, and Florida.

4. Upon information and belief, Defendant BCM is a Florida limited liability company with its principal place of business in Daytona Beach, Florida. As more fully explained below, Defendant BCM is subject to the jurisdiction of this Court. Defendant BCM may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

5. Upon information and belief, Defendant Rocket is a Florida limited liability company with its principal place of business in Huntsville, Alabama. As more fully explained below, Defendant Rocket is subject to the jurisdiction of this Court. Defendant Rocket may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

6. Upon information and belief, Defendant BCM of Valdosta is a Florida limited liability company with its principal place of business in Valdosta, Georgia. As more fully explained below, Defendant BCM of Valdosta is subject to the jurisdiction of this Court. Defendant BCM of Valdosta may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

7. Upon information and belief, Defendant TMO is a Florida limited liability company with its principal place of business in Henderson, Tennessee. As more fully explained below, Defendant TMO is subject to the jurisdiction of this Court. Defendant TMO may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

8. Upon information and belief, Defendant BCR is a Florida limited liability company with its principal place of business in Daytona Beach, Florida. As more fully explained below, Defendant BCR is subject to the jurisdiction of this Court. Defendant BCR may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

9. Upon information and belief, Defendant BCA is a Florida limited liability company with its principal place of business in Huntsville, Alabama. As more fully explained below, Defendant BCA is subject to the jurisdiction of this Court. Defendant BCA may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

10. Upon information and belief, Defendant RTG is a Florida limited liability company with its principal place of business in Valdosta, Georgia. As more fully explained below, Defendant RTG is subject to the jurisdiction of this Court. Defendant RTG may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

11. Upon information and belief, Defendant Thomas Radio is a Florida limited liability company with its principal place of business in Henderson, Tennessee. As more fully explained below, Defendant Thomas Radio is subject to the jurisdiction of this Court. Defendant Thomas Radio may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

12. Upon information and belief, Defendant Rainbow is a Tennessee corporation with its principal place of business in Jackson, Tennessee. As more fully explained below, Defendant Rainbow is subject to the jurisdiction of this Court. Defendant Rainbow may be served with process in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332, based on the diversity of citizenship between the parties and the fact that the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. Venue is proper in this judicial district. GE Capital is a resident of the State of New York and pursuant to Section 11.9 of the Credit Agreement each Defendant consented to and agreed "that the state or federal courts located in New York County, City of New York, New York shall have exclusive jurisdiction to hear and determine any claims or disputes between the [Defendants], Agent and Lenders pertaining to this Agreement or any of the other Loan Documents". In addition, pursuant to Section 19 of the Security Agreement each Defendant consented to and agreed "that the state or federal courts located in New York County, City of New York, New York shall have exclusive jurisdiction to hear and determine any claims or disputes between [Defendants], Agent and Lenders pertaining to this Security Agreement or any of the other Loan Documents".

# BACKGROUND

A. **The Credit Agreement and the Security Agreement and other Collateral Documents**

   *i.   The Credit Agreement*

15. On October 3, 2003, GE Capital, the Defendants and certain other Lenders, executed the Credit Agreement pursuant to which GE Capital (in its capacity as Agent and Lender) and the other Lenders agreed to provide (i) a Revolving Loan Commitment in a principal amount not to exceed $8,000,000, (ii) a $32,500,000 Term Loan A Commitment, and (iii) a $7,500,000 Term Loan B Commitment, for an aggregate principal total of $48,000,000. The Credit Agreement was amended eight (8) times on or about: (i) February 12, 2004; (ii) April 20, 2004; (iii) June 4, 2004; (iv) July 29, 2005; (v) May 15, 2006; (vi) December 29, 2006; (vii) April 20, 2007; and (viii) November 15, 2007.

16. By executing and delivering the Credit Agreement, the Defendants covenanted to comply with all the terms and conditions of the Credit Agreement and other Loan Documents, including but not limited to its obligation to make certain scheduled repayments of the Loans as set forth in the Credit Agreement.

17. Section 8.1 of the Credit Agreements established certain occurrences that constitute Events of Default, including, among others, whenever:

> (a) Any Borrower (i) fails to make (A) any payment of principal of the Loans or any of the other Obligations within two (2) Business Days of when due and payable (other than with respect to principal due on the maturity date (whether by acceleration or otherwise) for such Obligation, for which no grace or cure period shall apply), or (B) any payment of interest on, or Fees owing in respect of, the Loans or any of the other Obligations within five (5) Business Days of when due and payable, or (ii) fails to pay or reimburse Agent or Lenders for any expense reimbursable hereunder or under any other Loan Document within ten (10) Business Days following Agent's demand for such reimbursement or payment of expenses[.]

Credit Agreement § 8.1.

18. Pursuant to the terms of Section 8.2(b) the Credit Agreement:

> [i]f any Event of Default has occurred and is continuing, Agent may (and at the written request of the Requisite Lenders shall), without notice: (i) terminate the Revolving Loan facility with respect to further Advances or the incurrence of further Letter of Credit Obligations; (ii) reduce the Revolving Loan Commitment from time to time; (iii) declare all or any portion of the Obligations, including all or any portion of any Loan to be forthwith due and payable, and require that the Letter of Credit Obligations be cash collateralized in the manner set forth in <u>Annex B</u>, all without presentment, demand, protest or further notice of any kind, all of which are expressly waived by Borrowers and each other Credit Party; or (iv) exercise any rights and remedies provided to Agent under the Loan Documents or at law or equity, including all remedies provided under the Code[.]

Credit Agreement § 8.2(b).

19. The Loans under the Credit Agreement are cash flow loans in that the financing was underwritten by GE Capital based on the cash flow that the Defendants generate as a going concern enterprise and not on the liquidation value of the Defendants' assets.

20. The value generated from the ongoing operation of the Defendants' businesses will be lost if is GE Capital its forced to exercise its rights as a secured creditor under Article 9 of the Uniform Commercial Code or to pursue state court foreclosure rights. In recognition of this reality, the Defendants and GE Capital specifically negotiated and contracted for the right to the appointment of a receiver after an Event of Default to ensure to GE Capital a remedy which would allow for the continued operation of the Defendants' businesses so as to preserve the enterprise value upon which the financing was extended.

21. That remedy is set forth in Section 8.5 of the Credit Agreement as follows:

> [w]ithout limiting the generality of the foregoing or limiting in any way the rights of Lenders and Agent under the Collateral

Documents or otherwise under applicable law, at any time after the occurrence and during the continuance of an Event of Default and acceleration of the Notes and Obligations, the Agent, at the direction of Requisite Lenders, shall be entitled to apply for and, subject to any necessary prior FCC consent, to have a receiver or receiver and manager appointed under state or federal law by a court of competent jurisdiction in any action taken by the Agent or Lenders to enforce their rights and remedies hereunder and under the Collateral Documents in order to manage, protect, preserve, sell and otherwise dispose of all or any portion of the Collateral *and continue the operation of the business of the Credit Parties, or any of them, and their respective Subsidiaries*, and to collect all revenues and profits thereof and apply the same to the payment of all expenses and other charges of such receivership, including the compensation of the receiver, and the payment of the other Obligations until a sale or other disposition of such Collateral shall be finally made and consummated. Each Credit Party irrevocably consents to and waives any right to object to or otherwise contest the appointment of a receiver after the occurrence of an Event of Default and Acceleration of the Notes and Obligations, as provided above. Each Credit Party grants such waiver and consent knowingly after having discussed the implications thereof with counsel, *acknowledges that the uncontested right to have a receiver appointed for the foregoing purposes is considered essential by the Lenders in connection with the enforcement of their rights and remedies hereunder and under the Collateral Documents and other Loan Documents* .

Credit Agreement § 8.5 (emphasis added).

22. Section 8.5 of the Credit Agreement is not a boilerplate provision. It was specifically tailored in recognition that the Loans were cash flow loans and that GE Capital's ability to recover after an Event of Default would depend on the continued operation of the Defendants' businesses as a going concern.

23. Without the enforcement of receiver provisions in cash flow loans, it will be more difficult for GE Capital and other lenders to extend financing based on the enterprise value of a borrower.

ii. *The Security Agreement and Other Collateral Documents*

24. To secure the Loans evidenced by the Credit Agreement, the Defendants executed and delivered the Security Agreement in favor of GE Capital, granting to GE Capital a first priority lien in the Collateral.

25. Under Section 2 of the Security Agreement, the Collateral subject to the continuing first priority lien and security interest is more fully described as follows:

> each Grantor [(as defined in the Security Agreement)] hereby grants, assigns, conveys, mortgages, pledges, hypothecates and transfers to Agent, for itself and the benefit of lenders, a Lien upon all of its right, title and interest in, to and under all personal property and other assets (including, without limitation, the Stock of its Subsidiaries), whether now owned by or owing to, or hereafter acquired by or arising in favor of such Grantor (including under any trade names, styles or derivations thereof), and whether owned or consigned by or to, or leased from or to, such Grantor, and regardless of where located [], including: (i) all Accounts; (ii) all Chattel Paper; (iii) all Documents; (iv) all General Intangibles (including payment intangibles and Software); (v) all Goods (including Inventory, Equipment and Fixtures); (vi) all Instruments; (vii) all Investment Property; (viii) all Deposit Accounts, of any Grantor, including all Blocked Accounts, Disbursement Accounts, and all other bank accounts and all deposits therein; (ix) all money, cash or cash equivalents of any Grantor; (x) all Supporting Obligations of any Grantor; (xi) all Commercial Tort Claims listed on <u>Schedule VI</u> hereto; and (xii) to the extent not otherwise included, all Proceeds, commercial tort claims, insurance claims and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing.

Security Agreement § 2(a).

26. GE Capital has taken all necessary steps under state law to perfect its liens on and security interest in the Collateral.

## B. The Defendants' Defaults Under the Credit Agreement

27. The Defendants failed to comply with the terms and conditions of the Credit Agreement, and numerous Events of Default have occurred and are continuing thereunder.

28. The Defendants were notified by letter dated January 8, 2009, a true and correct copy of which is attached hereto as <u>Exhibit C</u>, of the Defendants' failure:

> to satisfy (i) <u>Section 1.1(b)(i)(B)</u> and <u>1.1(b)(ii)(B)</u> of the Credit Agreement with respect to Borrowers' failure to pay the required Term Loan A and Term Loan B quarterly principal installments due on December 31, 2008 [] and (ii) <u>Section 6.10</u> of the Credit Agreement for the Fiscal Quarter ending September 30, 2008, with respect to each of the Financial Covenants set forth in <u>Annex G</u> to the Credit Agreement, including Borrowers' failure to satisfy each of (a) the minimum Fixed Charge Coverage Ratio, (b) the minimum Interest Coverage Ratio, (c) the maximum Total Secured Leverage Ratio and (d) the maximum Total Leveraged Ratio . . . .

29. The Defendants were subsequently notified by letter dated April 13, 2009, a true and correct copy of which is attached hereto as <u>Exhibit D</u>, of the Defendants' failure:

> to satisfy (i) <u>Section 1.1(b)(i)(B)</u> and <u>1.1(b)(ii)(B)</u> of the Credit Agreement with respect to Borrowers' failure to pay the required Term Loan A and Term Loan B quarterly principal installments due on March 31, 2009 [], (ii) <u>Section 1.5(d)</u> of the Credit Agreement and the October 2008 Default letter with respect to Borrowers' failure to pay that portion of interest equal to the Default Rate with respect to the interest payments due on April 1, 2009 [], and (iii) <u>Section 6.10</u> of the Credit Agreement for the Fiscal Quarters ending December 31, 2008 with respect to each of the Financial Covenants set for in <u>Annex G</u> to the Credit Agreement, including Borrowers' failure to satisfy each of (a) the minimum Fixed Charge Coverage Ratio, (b) the minimum Interest Coverage Ratio, (c) the maximum Total Secured Leverage Ratio and (d) the maximum Total Leverage Ratio . . . .

30. Additionally, the Defendants were again advised of continuing and further Events of Defaults under the Credit Agreements and other Loan Documents by letters dated September 2, 2009 and October 8, 2009, true and correct copies of which are annexed hereto, respectively, as <u>Exhibits E and F</u>.

31. The Defendants failed to cure any of the Events of Default described in the January 8, 2009, April 13, 2009, September 2, 2009 or October 8, 2009 notice letters. As a result, on January 4, 2009, GE Capital notified the Borrower by letter, a true and correct copy of which is attached hereto as Exhibit G, that it was terminating the Commitments and accelerating the indebtedness evidenced by the Credit Agreement and made a demand for immediate payment of the same.

32. In addition, as a result of the continuing Events of Default and pursuant to the provisions of certain of the Loan Documents, GE Capital has exercised control and dominion over certain of the Defendants' depositary accounts with First Tennessee Bank, N.A. and Colonial Bank. As a result of the foregoing, Lender is entitled to exercise all of its rights and remedies under the Credit Agreement, Loan Documents, and pursuant to the Uniform Commercial Code and other applicable law, including but not limited to exercising its right to have a receiver appointed to take possession and control of the Collateral.

## COUNT I
### (Breach of Contract)

33. GE Capital incorporates by reference, re-alleges and repeats each of the allegations set forth in paragraphs 1 through 32 hereof as if fully set forth herein.

34. GE Capital has performed all of its obligations pursuant to the Credit Agreement and other Loan Documents.

35. The Defendants' conduct as described herein constitutes numerous breaches of the Credit Agreement and other Loan Documents. Under the Credit Agreement and other Loan Documents, the failure of the Defendants to make certain required payments or to fulfill its other contractual obligations constitutes an Event of Default.

36. Pursuant to the terms of the Credit Agreement and other Loan Documents, the Defendants are liable to Lender, jointly and severally, in the principal amount of no less than $38,886,250, plus attorneys' fees and other expenses of enforcement reimbursable pursuant to the terms of the Credit Agreement and other Loan Documents.

## COUNT II
### (Appointment of a Receiver)

37. GE Capital incorporates by reference, re-alleges and repeats each of the allegations set forth in paragraphs 1 through 32 hereof as if fully set forth herein.

38. Pursuant to the express terms of Section 8.5 of the Credit Agreement, GE Capital is entitled to seek the appointment of a receiver.

39. Further, pursuant to Rule 66 of the Federal Rules of Civil Procedure and 28 U.S.C. § 754, GE Capital is entitled to the appointment of a receiver.

40. Upon information and belief, the Defendants do not have sufficient funds to continue to operate their businesses and as a result there is imminent danger that the Collateral will diminish in value and, as a result, GE Capital will be irreparably harmed. Moreover, the value generated from the ongoing operation of the Defendants' businesses will be lost if GE Capital its forced to exercise its rights as a secured creditor under Article 9 of the Uniform Commercial Code or to pursue state court foreclosure rights and GE Capital's ability to recover the amounts loaned to the Defendants will be irreparably harmed as a result.

41. GE Capital does not have control or ownership over the Defendants' assets and cannot assure their continued operation where the Defendants' are not cooperative. As such, without the appointment of a receiver, the legal remedies available to GE Capital are inadequate to allow GE Capital as a secured creditor to realize on the value of the businesses as a going concern as opposed to liquidation value.

42. Upon information and belief, a receiver would have the ability to sell the Collateral as part of a going concern business that would result in a substantially higher realization of proceeds than would be likely generated from a state court foreclosure process or from the exercise of the remedies available to a secured party under Article 9 of the Uniform Commercial Code.

43. Therefore, a receiver should be appointed to ensure the continued operation of the Defendants' businesses as a going concern and to manage, control, protect and operate on a going concern basis the Collateral, pending a going concern sale, so as to realize the maximum value for the businesses with the proceeds to be used to satisfy the indebtedness of GE Capital.

44. By filing this Verified Complaint, GE Capital is not waiving its right to proceed with one or more foreclosure sales or sales under the Code of its collateral, or of its right to exercise any other remedy provided by law, in equity or by agreement; GE Capital expressly reserves its right to exercise such remedies

45. W. Lawrence Patrick is engaged in the business of working with troubled companies, has direct experience liquidating broadcasting companies and is prepared to act as receiver upon this Court's appointment. An affidavit of W. Lawrence Patrick is attached hereto as <u>Exhibit H</u>.

WHEREFORE, GE Capital demands judgment against each of the Defendants as follows:

(a) judgment be entered in favor of GE Capital against the Defendants;

(b) GE Capital recover from the Defendants: (i) no less than $38,886,250 in principal amount; (ii) accrued and unpaid interest through the date of judgment,

(iii) additional unpaid charges other than attorneys' fees through the date of judgment, and (iv) attorneys' fees on the outstanding indebtedness; and

(c) GE Capital be granted such other and further relief as may be just and proper.

Dated: New York, New York
January 4, 2010

        KING & SPALDING LLP

        By: _____
        Arthur J. Steinberg
        Heath D. Rosenblat
        1185 Avenue of the Americas
        New York, New York 10036-4003
        Telephone: (212) 556-2100
        Facsimile: (212) 556-2222

        and

        Sarah Robinson Borders
        1180 Peachtree Street, N.E.
        Atlanta, Georgia 30309-3521
        Telephone: (404) 572-4600
        Facsimile: (404) 572-5100

        *Counsel for Plaintiff General Electric Capital Corporation*

# VERIFICATION

I, Nirmal B. Bivek, being duly sworn, deposes and says that I am a Vice President and Duly Authorized Signatory of the Plaintiff herein and that I have read the foregoing Verified Complaint and know the contents thereof and that the same are true and correct to the best of my knowledge, information, and belief, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true and all of the Exhibits attached to said Verified Complaint are true and correct copies of documents related to the Loans at issue in this matter.

_____
Nirmal B. Bivek
Vice President and Duly Authorized Signatory

Sworn to and subscribed before me,
this 4th day of January, 2010

_____
Notary Public

My Commission Expires: 06/11/13

```
KATHLEEN J. PLANTZ
NOTARY PUBLIC
FORSYTH CO., GEORGIA
MY COMMISSION EXPIRES
JUNE 11, 2013
```